# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHARLES JOSEPH MAKI,

    *Petitioner*,

vs.

ROBERT LEGRAND, *et al.*,

    *Respondents*.

3:12-cv-00201-LRH-VPC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on a *sua sponte* inquiry into whether the petition is time-barred because it was not filed within the one-year limitation period in 28 U.S.C. § 2244(d)(1). This order follows upon an earlier show cause order (#6) and petitioner's response (#11) thereto. Petitioner contends, *inter alia*, that a State-created unconstitutional impediment prevented a timely filing and thereby delayed accrual under § 2244(d)(1)(B).

### *Background*

Petitioner Charles Joseph Maki seeks to challenge his 1994 Nevada state conviction, pursuant to a jury verdict, of three counts of sexual assault on a child under the age of 14 years and five counts of lewdness with a child under the age of 14 years.[1]

The Supreme Court of Nevada affirmed in No. 26049 on October 4, 1995.[2] The time period for Maki to file a petition for a writ of *certiorari* in the United States Supreme Court expired on January 2, 1996.

---

[1] See No. 2:01-cv-00268-RLH-PAL, #25, Ex. 1, at electronic docketing pages 4-5.

[2] See *id.*, #26, Ex. 9, at electronic docketing page 19.

On or about May 3, 1996, petitioner mailed a state post-conviction petition to the clerk of the state district court for filing, and the clerk filed the petition on May 9, 1996.[3] The state district court denied relief, and the Supreme Court of Nevada affirmed, in No. 30904. The remittitur issued on November 7, 2000.[4]

On or about March 5, 2001, petitioner mailed a federal habeas petition to the Clerk of this Court for filing. The Clerk received the petition on March 12, 2001, and docketed the matter under No. 2:01-cv-00268-RLH-PAL.

In No. 2:01-cv-00268, the Court denied petitioner's initial motions for appointment of counsel. On March 11, 2004, however, following review of a motion to dismiss by the respondents, the Court appointed the Federal Public Defender to represent petitioner. The order made no finding that the interests of justice required the appointment of counsel. Assistant Federal Public Defender Lori C. Teicher entered an appearance for petitioner.[5]

Thereafter, Maki quarreled essentially continuously with the Federal Public Defender as to the handling of the case, with Maki airing his disagreement with appointed counsel in open-record filings disclosing confidential attorney-client communications. Maki's dispute with counsel ultimately culminated in the Federal Public Defender moving to withdraw and Maki moving to be represented by a non-lawyer, Mr. George "Bo" Beard.

In a January 24, 2005, order, the Court described the situation then presented and the action that it was taking as follows:

> Counsel appropriately filed the motion to withdraw under seal so as to preserve the confidentiality of the attorney-client relationship. Petitioner, however, filed his motion in the open record, attached a copy of counsel's theretofore sealed motion, and served the foregoing, including the previously sealed motion, on counsel for respondents. This follows upon a number of open record *pro se* filings by petitioner in which he disclosed confidential communications from or to appointed

---

[3] See No. 2:01-cv-00268-RLH-PAL, #26, Ex. 9, at electronic docketing pages 21 & 30.

[4] The Court takes judicial notice of the online docket record of the Supreme Court of Nevada, which may be found at: http://caseinfo.nvsupremecourt.us/public/caseSearch.do.

[5] See No. 2:01-cv-00268-RLH-PAL, ## 4, 11 & 44-46.

> counsel, despite having been advised by counsel of the need to preserve the confidentiality of their communications. The Court accordingly files this order in the open record rather than under seal, as nothing is disclosed herein that petitioner has not already disclosed in his own open-record filings.
>
> . . . . .
>
> The Court appointed counsel out of an abundance of caution in an effort to move the matter to a more prompt resolution. Since that time, petitioner has been unable to reach agreement with his counsel regarding the claims to be presented. He has repeatedly aired these disagreements in open-record *pro se* filings that reveal confidential communications between attorney and client. He further has refused to execute a proper unqualified verification of the amended petition filed by counsel, instead filing an equivocal verification attesting that he is verifying the petition only under duress and coercion.
>
> After reviewing the prior record, the affidavit of counsel submitted with the motion to withdraw, petitioner's *pro se* responding motion for appointment of counsel, and the fourth and fifth amended petitions, the Court finds, first, that the impasse with current counsel cannot be resolved, and second, that it is more probable than not that the Court will be presented with the same impasse again if it appoints substitute legal counsel. At bottom, no competent attorney appointed will proceed as petitioner wishes for counsel to proceed. Petitioner, in turn, has shown that he is unrelenting both in his desire to pursue a course that no counsel will pursue and further in his willingness to place the confidentiality of the attorney-client relationship in substantial jeopardy by airing his disagreements with counsel in the open record. Denial of the motion to withdraw or appointment of substitute counsel thus would result only in the further futile expenditure of public funds, further delay in the final resolution of this matter, and further jeopardy to the confidences normally protected by the attorney-client relationship.
>
> The Court accordingly finds that continued appointment of counsel would not be in the interests of justice in this case. The motion to withdraw therefore will be granted and the petitioner's motion for appointment of substitute counsel will be denied.[FN1] . . . .
>
>> [FN1] The Court notes that in no event would it appoint Mr. George "Bo" Beard, a non-lawyer, to represent petitioner, as is requested in petitioner's motion.

No. 2:01-cv-00268-RLH-PAL, #61, at 1 & 2-3 (footnote omitted).

Seventeen months and numerous filings later, court mail directed to petitioner was returned with a notation that he no longer was at the institution. The Court accordingly dismissed the action without prejudice pursuant to its local rule requiring that a litigant immediately file written notification of any change of address. Final judgment dismissing the case was entered on July 5, 2006. See No. 2:01-cv-00268-RLH-PAL, ## 76-78.

One year and nearly seven months later, on or about January 29, 2008, petitioner sent an *ex parte* notice seeking a decision or a docket sheet report of action in the case. On February 19, 2008, the Court directed the Clerk to send petitioner a copy of the filings immediately prior to and through the dismissal of the case by entry of final judgment. The Court further reminded petitioner that he must include in all papers filed a certificate of service upon respondents' counsel.[6]

On or about February 26, 2008, Maki mailed for filing another one-page *ex parte* filing without a certificate of service in which he challenged the dismissal. On March 11, 2008, the Court struck the filing due to petitioner's failure to include a certificate of service showing service on respondents' counsel.[7]

Thereafter, on or about April 21, 2008, petitioner mailed a motion for relief from judgment to the Clerk for filing, with a certificate showing service on respondents' counsel. On August 18, 2008, the Court denied the motion. The Court stated, *inter alia*:

> . . . . In the motion, the petitioner does not dispute that he was not at Lovelock when the show cause order and order and judgment of dismissal were sent to him. Nor does he dispute that he did not provide the Court with notification of a change of address. He asserts that he temporarily was being housed at a prison in Indian Springs, Nevada. Indian Springs is in the southern part of Nevada and is an approximately 400 mile drive from Lovelock, which is in the northern part of the state northeast of Reno. Petitioner maintains that his failure to receive the Court's orders – his failure to provide written notification of his change of address notwithstanding – was not his fault but instead was the fault of prison authorities for not forwarding his mail.
>
> . . . . .
>
> Relief under Rule 60(b)(1) is not available because petitioner did not seek postjudgment relief -- in any respect -- within one year after entry of judgment. Under Rule 60(c)(1), a motion under clauses (1) through (3) of Rule 60(b) must be made "no more than a year after the entry of the judgment." The district court does not have jurisdiction over a motion made under clauses (1) through (3) of Rule 60(b) that is filed more than one year after entry of judgment. *See,e.g., Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989).
>
> Petitioner contends that the judgment should be set aside under Rule 60(b)(4) on the basis that the judgment is void. He contends that

---

[6]See No. 2:01-cv-00268-RLH-PAL, ## 79-80.

[7]See No. 2:01-cv-00268-RLH-PAL, ## 81-82.

-4-

> the judgment is void because he allegedly was denied due process because he did not receive notice. An order may be set aside under Rule 60(b)(4) if it is void, but an allegedly erroneous order is not a void one for purposes of Rule 60(b)(4). *See,e.g., In re Sasson*, 424 F.3d 864, 875 (9th Cir. 2005). A final judgment is void for purposes of Rule 60(b)(4) only if the court that issued the order acted in a manner inconsistent with due process of law. *E.g., United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999). In the present case, petitioner did not receive notice due to any denial of due process. Rather, the petitioner's failure to receive notice of the Court's orders followed upon his own failure to provide written notification of his change of address as required by the local rule. Under established law, "[a] party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address." *Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988); *see also In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991)(service not defective where party failed to notify court of change of address). Petitioner did not advise this Court – at any time – of the change of address. He has not established a basis for vacating the judgment under Rule 60(b)(4).
>
> Petitioner finally contends that the judgment should be set aside under Rule 60(b)(6), which provides that a party may obtain relief from a judgment "for any other reason that justifies relief." The circumstances relied upon by petitioner at best would have pertained to a timely motion based upon alleged excusable neglect under Rule 60(b)(1). Under established law, Rule 60(b)(6) is not a substitute for Rule 60(b)(1). A petitioner therefore may not use clause (6) to circumvent the one-year limitations period that applies to clause (1) by presenting a motion based upon grounds specified in clause (1) instead as a motion under cause (6). *See,e.g., Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393-95,113 S.Ct. 1489, 1497-98, 123 L.Ed.2d 74 (1993); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 n.11, 108 S.Ct. 2194, 2204 n.11, 100 L.Ed.2d 855 (1988); *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049-50 (9th Cir. 1993). In this case, petitioner's failure to receive notice of the Court's orders followed upon his failure to comply with the local rule and provide prompt written notice of the change of address. The reason for the local rule requiring immediate written notification of a change of address is so that the litigant will receive notice of the Court's orders. Moreover, petitioner further neglected the matter for more than a year and a half after entry of judgment.

No. 2:01-cv-00268-RLH-PAL, #87, at 2-4 (footnote omitted).

Petitioner did not appeal the August 18, 2008, denial of the motion for relief from judgment.[8]

Over three years and seven months later, on or about April 9, 2012, petitioner mailed the present federal petition to the Clerk of this Court for filing, challenging the same judgment of conviction.

---

[8] Petitioner, who had not been granted pauper status, filed two motions for free copies in early 2009, which the Court granted in part. See No. 2:01-cv-00268-RLH-PAL, ## 89-91.

*Discussion*

***Base Calculation of the Federal Limitation Period***

Pursuant to *Herbst v. Cook*, 260 F.3d 1039 (9th Cir. 2001), the Court *sua sponte* has raised the question of whether the petition is time-barred for failure to file the petition within the one-year limitation period in 28 U.S.C. § 2244(d)(1).

Petitioner's conviction became final on January 2, 1996, prior to the April 24, 1996, effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). A federal habeas petition challenging a judgment of conviction that became final before the passage of the Act must be filed, absent tolling or delayed accrual, within one year after the April 24, 1996, effective date of the Act. *See, e.g., Patterson v. Stewart*, 251 F.3d 1243, 1245-46 (9th Cir. 2001).

The federal limitation period in this case therefore began running after April 24, 1996. However, petitioner mailed a timely state post-conviction petition on or about May 3, 1996, after 8 days had elapsed in the federal limitation period. Under 28 U.S.C. § 2244(d)(2), the federal one-year limitation period is statutorily tolled during the pendency of a properly filed application for state post-conviction relief. The federal limitation period therefore was statutorily tolled in this case from on or about May 3, 1996, through the issuance of the remittitur on November 7, 2000. After this date, the federal limitation period began running again.

The pendency of petitioner's prior federal petition in No. 01-cv-00268 did not toll the running of the federal limitation period. *Duncan v. Walker*, 533 U.S. 167 (2001).

Accordingly, absent other tolling or delayed accrual, the federal limitation period expired 357 days after the November 7, 2000, remittitur, *i.e.*, on October 30, 2001.

***Alleged Delayed Accrual under 28 U.S.C. § 2244(d)(1)(B)***

Petitioner, in essence, contends that the limitation period did not begin to run as described in the preceding section but that the limitation period instead was subject to delayed accrual under 28 U.S.C. § 2244(d)(1)(B), on multiple grounds discussed further below.

Under § 2244(d)(1)(B), the "limitation period shall run from . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."

*First*, petitioner contends that he was subjected to an unconstitutional State-created impediment when the prosecution allegedly failed to turn over favorable photographic forensic evidence prior to trial that was not revealed until the testimony of the sexual assault examination nurse at the April 1994 trial, allegedly in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner has not presented a viable basis for delayed accrual under § 2244(d)(1)(B) on the basis of an alleged *Brady* violation premised upon the State not disclosing favorable evidence until the trial. § 2244(d)(1)(B) requires not merely a showing of a violation of the Constitution or laws of the United States in isolation. Rather, § 2244(d)(1)(B) instead requires a showing of such a violation that creates an "impediment *to the filing of an application*," *i.e.,* a federal habeas petition. Under established Ninth Circuit law, a petitioner seeking to demonstrate delayed accrual on this basis must demonstrate that the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court." *Ramirez v. Yates*, 571 F.3d 993, 1000–1001 (9th Cir.2009)(emphasis in original). Nothing in the occurrence of a *Brady* violation where disclosure allegedly was delayed until trial prevented Maki from presenting his claims thereafter in any form to any court. Indeed, Maki quite clearly filed both a state petition and a federal petition notwithstanding the alleged prior occurrence of the *Brady* violation. Indeed, petitioner presented the same underlying *Brady* claim itself in both the state and federal petitions.[9] The alleged occurrence of a *Brady* violation based upon a failure to disclose favorable evidence until the 1994 trial quite clearly did not prevent Maki from filing a federal habeas petition continuously for nearly two decades thereafter, either logically or in actual fact.

*Second*, petitioner contends that he was not canvassed at trial, outside the presence of the jury, as to whether he wished to testify. He alleges, *inter alia*, that the trial judge ordered his mouth to be taped shut with duct tape. Petitioner either is proceeding on the erroneous notion that demonstrating any alleged constitutional error demonstrates an impediment that delays accrual of the federal limitation period or he simply is presenting irrelevant merits argument. Either way, he has not shown a basis for delayed accrual under § 2244(d)(1)(B), and the argument otherwise has no bearing on untimeliness.

---

[9]Compare No. 2:01-cv-00268-RLH-PAL, #26, Ex. 10, at electronic docketing page 34 (state Ground 3 supporting facts), and, *id.*, #6, at 7 (federal Ground 3), with #11, at 3-7 (*Brady* allegations in show-cause response).

*Third*, petitioner contends that he was subjected to an unconstitutional State-created impediment with regard to the handling of his mail from this Court in connection with the dismissal of No. 2:01-cv-00268. He maintains that he was transported from Lovelock Correctional Center ("Lovelock") to Southern Desert Correctional Center ("Southern Desert") in early 2006, that he listed a Southern Desert address on a filing prior to the dismissal, and that the Lovelock prison law library failed to forward his mail to Southern Desert as allegedly required by policy.

Whatever correctional authorities allegedly failed to do in 2006 did not prevent petitioner from filing a petition at any time prior to the expiration of the federal limitation period otherwise nearly five years earlier on October 30, 2001. § 2244(d)(1)(B) does not operate to revive a long-since expired limitation period where there was no impediment to filing or other basis for tolling or delayed accrual prior to the expiration of the limitation period. Petitioner's argument simply is a *non sequitur.*

Moreover, even if the Court were through some tortured logic to regard the events in 2006 as a basis for delayed accrual nearly five years after the limitation period already had expired on October 30, 2001, petitioner quite clearly knew of the prior dismissal in early 2008. He did not file the present federal petition until approximately *four years* later, and over *three years* after the denial of his motion for relief from judgment in that case. Petitioner presents no viable basis for tolling and/or delayed accrual during those multiple intervening years. None of the well-after-the-fact circumstances from 2006 that petitioner relies upon prevented him from filing the federal petition that he filed in 2012 instead in, *e.g.,* 2011, 2010, or 2009.

Petitioner in essence is seeking to relitigate in this action the dismissal of his first federal petition and the denial therein of his motion for relief from judgment. Petitioner's remedy, if any, with regard to the dismissal of No. 2:01-cv-00268 was via requests for relief filed in that proceeding and/or via an appeal, the latter of which petitioner did not pursue. Nothing that occurred in the prior action provides a basis for rendering timely a second federal petition filed over a decade after the expiration otherwise of the federal limitation period, nearly six years after the prior dismissal, approximately four years after petitioner unquestionably learned of the prior dismissal, and over three years after the denial of a motion for relief from judgment in that case. The dismissal in No. 2:01-cv-00268 is a long since conclusively resolved matter and does not provide a viable basis for rendering the present petition

timely multiple years after the fact. Again, any *arguendo* error or State-created constitutional deprivation in connection with the dismissal of the prior action has not prevented petitioner from filing a federal petition in the *years* that have intervened.[10]

*Fourth*, petitioner contends that the use of a "paging system" for prison law library access at Lovelock, which does not involve direct physical access to the library, denied him access to the courts and constituted an impediment for purposes of § 2244(d)(1)(B). He relies upon *Koerschner v. Warden*, 508 F.Supp.2d 849, 851 (D.Nev. 2007), in support of this argument.

There are several fundamental flaws with this argument. First, the physical satellite library in the sex-offender protective segregation unit at Lovelock was not closed during the conversion to a paging system until late 2006, five years after the limitation period expired on October 30, 2001. *See Koerschner*, 508 F.Supp.2d at 851. Second, the adoption of the paging system at Lovelock further had nothing to do with the dismissal of the prior action, which may not be relitigated in this action in any event, and appears to have been adopted subsequent to that dismissal. Third, the use of a paging system at Lovelock has not "altogether prevented [petitioner] from presenting his claims in *any* form, to *any* court" at any point, much less continuously from 2006 through the filing date of the present petition in 2012. *Cf. Ramirez, supra*. The Court takes judicial notice that Nevada state inmates at institutions with paging system law library access, including Lovelock, have filed hundreds if not thousands of petitions, complaints, and other filings from 2006 continuously through to the present day. Fourth, Judge Reed explicitly declined to make a constitutional holding in *Koerschner*, and his comments were directed to

---

[10] The Court additionally notes in passing that embedding a new address in a filing does not constitute a written notice of a litigant's new address and does not establish that the Court is aware of the new address. Local Rule LSR 2-2 requires that a litigant "immediately file with the Court written notification of any change of address." This requires that the litigant in fact send a written notice of the change of address, not merely *sub silentio* embed an address in filings. See ## 12 & 13 (recent notices by petitioner of change of address). Otherwise, the local rule would read only that a litigant "must include his most recent address on all filings." The purpose of such a notice is to avoid what happened here, by providing the Clerk with a clear notice of the plaintiff's change of address. If plaintiff instead had complied with the local rule, he would not have had to rely upon the Clerk independently observing that he used a different address on a recent filing and/or a prison law library tracking him down in the state-wide prison system and forwarding his mail. In both instances, neither the Clerk nor the prison law library can independently determine how long an inmate will be at a particular institutional address. The purpose of a clear notice of change of address is for the plaintiff to clearly indicate to the Clerk where his mail then should be sent, to get the mail sent to the proper place in the first instance. When petitioner failed to comply with the local rule, he created the very situation that the rule is intended to avoid and that led to the dismissal of the prior petition.

1 circumstances weighing in favor of appointment of federal habeas counsel. *See* 508 F.Supp.2d at 861.
2 *Fifth*, this Court further has rejected the proposition that the mere fact that a prison uses a paging system
3 for law library access in and of itself provides a basis for equitable tolling of the federal limitation
4 period. *See, e.g., Felix v. McDaniel*, 2012 WL 666742, No. 3:09-cv-00483-LRH-WGC, at *5-*9 (D.
5 Nev., Feb. 29, 2012). *A fortiori*, use of a paging system in and of itself does not constitute an
6 unconstitutional impediment giving rise to a basis for delayed accrual under § 2244(d)(1)(B).

7      *Fifth*, petitioner contends that he has been denied access to the courts as an impediment for
8 purposes of § 2244(d)(1)(B) because: (a) he has no computer access to the federal court electronic
9 docketing system, *i.e.*, the Case Management/Electronic Case Files (CM/ECF) system; and (b) the Clerk
10 of this Court charges litigants for copies of a docket sheet after one has been provided previously. He
11 maintains, *inter alia*, that "[t]he Attorney General's Office and the Federal Public Defender's Office
12 would have access at their fingertips, but not the petitioner, whom is at somewhat of a disadvantage."[11]

13      Once again, there are several fundamental flaws with this argument. First, the federal electronic
14 docketing system and the federal clerk's fee requirements do not constitute State action for purposes
15 of § 2244(d)(1)(B). Second, CM/ECF did not come on stream in this Court until approximately
16 November 2005, four years after the limitation period expired on October 30, 2001. Third, neither
17 CM/ECF nor the Clerk's fee requirements had anything to do with the dismissal of the prior action,
18 which may not be relitigated in this action in any event. That action was dismissed because petitioner
19 failed to file a written notice of his change of address, not because of his inability to check the record
20 or to obtain a copy of a docket sheet. Petitioner was not proceeding *in forma pauperis*, and he thus had
21 to pay for copies just like any other litigant. Fourth, neither CM/ECF nor the Clerk's fee requirements
22 "altogether prevented [petitioner] from presenting his claims in *any* form, to *any* court" at any point,
23 much less continuously from 2006 through the filing date of the present petition in 2012. *Cf. Ramirez,*
24 *supra*. Prisoners have been filing and pursuing habeas petitions without access to an electronic
25 docketing system literally for centuries. *See, e.g., Darnel's Case*, 3 How. St. Tr. 1 (K.B.1627).

---

[11]Of course, if Maki had not balked at the representation provided by the Federal Public Defender, he would have had counsel ultimately with such "fingertip" access. As the Court found then, "[a]t bottom, no competent attorney appointed will proceed as petitioner wishes for counsel to proceed." Petitioner was the architect of his own situation.

-10-

Accordingly, petitioner has presented no viable basis for delayed accrual of the federal limitation period under § 2244(d)(1)(B).

Petitioner presents no other argument, whether seeking to establish equitable tolling or any other basis for avoiding the application of the federal time bar. With respect to equitable tolling, petitioner clearly has not demonstrated that an extraordinary circumstance stood in the way of a timely filing continuously from the otherwise expiration of the federal limitation period on October 30, 2001, through to within one year of the constructive filing of the present federal petition on or about April 9, 2012. Nor has he remotely established that he has been pursuing his rights diligently, particularly during the *years* that have ensued since the 2006 circumstances of which he principally complains herein.[12]

Nor has petitioner even begun to shoulder the burden that he would have to shoulder in order to establish a basis for relief under the *Schlup*[13] actual innocence gateway, if available to overcome the federal time bar.[14]

Petitioner accordingly has failed to present a viable basis for overcoming the untimeliness of the petition. The petition is time-barred and therefore will be dismissed with prejudice.

IT THEREFORE IS ORDERED that the petition shall be DISMISSED with prejudice as time-barred.

---

[12] Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S.327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007)(quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

[13] *Schlup v. Delo*, 513 U.S. 298 (1995).

[14] *Compare Lee v. Lampert*, 653 F.3d 929 (9th Cir. 2011)(*en banc*)(holding that a petitioner is not barred by the federal limitation period from filing an otherwise untimely habeas petition if the petitioner makes a credible showing of actual innocence under *Schlup*), *with*, *McQuiggin v. Perkins*, 133 S.Ct. 527 (2012)(granting a petition for a writ of *certiorari* raising, *inter alia*, the question of whether the federal time bar may be avoided on a showing of actual innocence).

1            IT FURTHER IS ORDERED that a certificate of appealability is DENIED. Reasonable jurists would not find debatable or wrong the district court's dismissal of the petition as untimely. The federal limitation period, absent tolling or other delayed accrual, expired on October 30, 2001. Petitioner in fact filed a federal petition within that time period, but the prior action was dismissed in 2006 after petitioner failed to file a written notice of his change of address. The Court denied post-judgment relief in that prior action in 2008, and petitioner did not appeal. He did not constructively file the present action until years later, on or about April 9, 2012. Petitioner's efforts to establish a basis for delayed accrual under 28 U.S.C. § 2244(d)(1)(B) based upon a State-created impediment to filing are fundamentally flawed. On the one hand, petitioner relies upon already-known alleged trial errors that clearly did not constitute an impediment thereafter to the filing of even the underlying claims, much less to the filing of a timely federal petition. On the other hand, petitioner in essence seeks to relitigate the dismissal of the prior federal action as an alleged "impediment" to filing under § 2244(d)(1)(B). Even if a court were to indulge petitioner's tortured logic in this regard, the circumstances surrounding the 2006 dismissal clearly did not constitute an impediment continuously for several *years* thereafter, up to within one year of the April 9, 2012, constructive filing date of the present petition. Petitioner's arguments seeking to overcome the federal time bar have no conceivable merit as a basis for rendering the present petition timely.

            IT FURTHER IS ORDERED that, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the Clerk shall provide a copy of this order, the judgment, and the petition to respondents by effecting informal electronic service upon Catherine Cortez Masto as per the Clerk's current practice. **No response is required from respondents, other than to respond to any orders of a reviewing court.**

            The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

            DATED this 12th day of April, 2013.

                                                                                    _____
                                                                                    LARRY R. HICKS
                                                                                    UNITED STATES DISTRICT JUDGE